# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DEKE DURASO** | : | **DOCKET NO. 2:17-cv-1530** |
| **D.O.C. # 352900** | | **SECTION P** |
| | | |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| | | |
| **DARREL VANNOY** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Deke Duraso, who is proceeding pro se in this matter. Duraso is an inmate in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Darrel Vannoy, warden of that facility and respondent in this matter, opposes the petition.

This petition is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the petition for writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE**.

# I.
## BACKGROUND

### A. Conviction

On March 5, 2009, Duraso was charged with four counts of aggravated incest,[1] a violation of Louisiana Revised Statute § 14:89.1, in the Fourteenth Judicial District, Calcasieu Parish, Louisiana. Doc. 17, att. 6, pp. 10–11. The record reflects that he was arrested in West Virginia on December 9, 2008, and later extradited to Calcasieu Parish, after the victim disclosed that he had sexually abused him/her.[2] *See id.* at 61–66, 79–89.

On June 7, 2011, Duraso filed a pro se motion to quash based on the state's failure to commence trial within the time set forth under Article 578(A)(2) of the Louisiana Code of Criminal Procedure.[3] *Id.* at 164–68. The trial court denied Duraso's motion without a hearing. *Id.* at 169. On September 2, 2011, defense counsel filed a motion to quash based on the trial court's failure to grant a hearing on the defendant's pro se motion. *Id.* at 183. The trial court responded by ordering a response from the state. *Id.* It then denied Duraso's motion, which it termed a "Motion to Reconsider the Motion to Quash." *Id.* at 28. A jury trial began the next day, on September 7, 2011. *Id.* at 29. Instead of proceeding to trial, however, Duraso entered a guilty plea to all four charges before jury selection was complete. *Id.* at 29–30.

The trial court rejected the parties' sentencing recommendation of twenty-five years and instead sentenced Duraso to terms of twenty years on each count, with the terms for first two counts

---

[1] That crime is now designated as an "aggravated crime against nature." *See* 2014 La. Sess. Law Serv. Act 177 (H.B. 530) (West).

[2] Because the conviction implies a familial relationship between petitioner and victim, we take extra measures to protect the victim's identity by not disclosing his/her sex or initials.

[3] Under that article, the state must bring a defendant to trial on a non-capital felony within two years of the institution of prosecution. La. C. Cr. P. art. 578(A)(2). This time limit is subject to suspension and interruption by certain events. *Id.* at arts. 579, 580. Upon expiration of the time limit, however, the defendant may bring a motion to quash the indictment, and the dismissal of the indictment means that the defendant cannot be prosecuted for the same or a lesser offense based on the same facts. *Id.* at art. 581. A defendant's failure to bring a motion to quash on this basis before trial waives his right of dismissal. *Id.*

to run consecutively, ten years of the third count to run consecutive to the terms imposed for counts 1 and 2 and ten years to run concurrent to those terms, and with all twenty years of count 4 to run concurrent to the terms imposed for counts 1 through 3, resulting in a total term of imprisonment of fifty years. *Id.* at 30–31; *see* doc. 17, att. 7, pp. 177–78. The petitioner then filed a motion to withdraw guilty plea and a motion to reconsider sentence, which the trial court heard and denied on September 23, 2011. Doc. 17, att. 6, p. 32. He also filed a motion for appeal and designation of record on October 21, 2011. Doc. 17, att. 7, pp. 83–84.

On January 10, 2012, the Louisiana Third Circuit Court of Appeal granted Duraso's writ application as it related to the denial of his motion to quash and found that Duraso was entitled to an evidentiary hearing on that matter. *Id.* at 88. The trial court set the matter for hearing on February 8, 2012, but then determined that it did not have jurisdiction because an appeal of the conviction and sentence was already pending as described below. *Id.* at 105. The trial court informed Duraso and the state, via letter, that "[t]he Third Circuit has been alerted to the issue and informed the District Attorney that they will likely remand this case for the hearing once the record has lodged." *Id.* The Third Circuit then remanded the appeal to the trial court for a hearing on the motion to quash. Doc. 17, att. 9, p. 10. On October 15, 2012, the trial court issued written reasons denying the motion to quash, based on its finding that Duraso's preliminary pleas had interrupted the limitations period for commencing prosecution under Article 578 of the Louisiana Code of Criminal Procedure. *Id.* at 49–52.

### B.  Direct Appeal

Duraso raised the following assignments of error in the Louisiana Third Circuit Court of Appeal:

1. The trial court erred in denying his motion to quash, because prosecution was commenced outside of the two year limitations period under Louisiana Code of Criminal Procedure Article 580.

2. The trial court erred in denying his motion to withdraw guilty plea, based on the court's rejection of the 25-year sentencing recommendation agreed to by the parties.

3. The sentence was excessive.

4. The trial transcript contained errors.

*State v. Duraso*, 127 So.3d 1015 (La. Ct. App. 3d Cir. 2013). The Third Circuit reviewed all claims on the merits and denied relief. *Id.* Duraso sought review in the Louisiana Supreme Court through applications for supervisory and remedial writs, both of which were denied on June 20, 2014. *State v. Duraso*, 141 So.3d 286 (La. 2014). He did not file a petition for writ of certiorari in the United States Supreme Court. Doc. 1, p. 2.

### C. State Collateral Review

Duraso filed a pro se application for post-conviction relief in the trial court on August 21, 2015, claiming ineffective assistance of counsel and that the trial court applied Article 580 of the Louisiana Code of Criminal Procedure unconstitutionally by denying his motion to quash.[4] Doc. 17, att. 3, pp. 138–83. The trial court denied the application without a hearing. Doc. 17, att. 4, pp. 237–39. Duraso sought review in the Third Circuit, which denied same with a brief written opinion noting that Duraso had failed to show ineffective assistance under *Strickland v. Washington*, 104 S.Ct. 2052 (1984), and that his claim relating to the motion to quash was repetitive under Article 930.4(A) of the Louisiana Code of Criminal Procedure. *Id.* at 248. Duraso then sought review in the Louisiana Supreme Court, which denied same in a one-word order on September 22, 2017. *State ex rel. Duraso v. State*, 227 So.3d 821 (La. 2017). As Duraso shows, however, and the

---

[4] For pro se filings by an inmate, this court uses the date that the pleading was surrendered for mailing, if available, as the date of filing. If that date is not provided, we look to the date that the pleading was received by the court.

respondent agrees, mailing of notice of this ruling was possibly delayed until at least October 25, 2017, due to staffing problems at the Louisiana Supreme Court. *See* doc. 1, att. 3, p. 143 (letter from Louisiana Supreme Court clerk noting a general mailing delay from that court to the Louisiana State Penitentiary); *id.* at 144 (envelope from Louisiana Supreme Court, marked as received on October 31, 2017); doc. 17, att. 1, p. 16 (respondent's agreement that October 25, 2017, should be used as the date of notice for that ruling).

### D. Federal Habeas Petition

The instant petition was filed in this court on November 17, 2017. Doc. 1. Here Duraso raises the following claims for relief:

1. Duraso was denied his constitutional rights to due process and a speedy trial through the denial of his motion to quash.

2. The trial court erred in denying Duraso's motion to withdraw his guilty plea.

3. The enforcement of Louisiana Code of Criminal Procedure Article 580 is unconstitutional as applied to Duraso's case.

4. Trial counsel provided ineffective assistance by failing to (a) sufficiently consult with Duraso and conduct an adequate investigation, (b) present a defense, (c) object to any of the state's continuances, and (d) advise Duraso of the possible sentencing range, including the potential for the sentences to run consecutively.

5. Trial counsel provided ineffective assistance based on the complete breakdown of communication or irreconcilable conflict with his client, arising from Duraso's challenge to trial counsel's refusal to file a motion to quash and failure to prepare a defense.

6. Trial counsel provided ineffective assistance when Mr. Williams and his supervisor, Mr. Dixon, betrayed Duraso's trust and testified against him.

*Id.* He also appears to request an evidentiary hearing on his claims. Doc. 1, att. 2, p. 56.

## II.
### STANDARDS ON HABEAS REVIEW

### A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. Exhaustion and Procedural Default

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d

532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any assertions by respondent under these doctrines, in addition to conducting our own review.

### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require that a petitioner seeking federal habeas corpus relief exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition.

### 2. *Procedural Default*

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553–54, 2564 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 118 S.Ct. 478, 480 (1997). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989). To serve as adequate grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *E.g.*, *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). That statute provides that a writ of habeas corpus shall not be granted

unless the state court's adjudication resulted in a decision that was (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d). Where a habeas court is faced with an unexplained decision on the merits, it "looks through" that decision to the last related state court decision that provides a relevant rationale and presumes that the unexplained decision adopts the same reasoning. The respondent may rebut the presumption by showing that the unexplained decision most likely relied on different grounds than the reasoned decision below. *Wilson v. Sellers*, 138 S.Ct. 1188 (2018). Our review, however, ultimately encompasses "only a state court's decision, and not the written opinion explaining that decision." *Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (internal quotations omitted); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.") Even if the state court issues a summary denial of the claim, "the habeas petitioner's burden still must be met be showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. The petitioner must demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786–87. A decision is only contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at

a [contrary result]." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (quotations and citations omitted). As the Court recently emphasized, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' . . . Nor, of course, do state-court decisions, treatises, or law review articles." *Kernan v. Cuero*, 138 S.Ct. 4, 9 (2017) (internal citation omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies only to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination. Instead, he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Instead, a presumption of correctness attaches to the state court's factual determinations and the petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III.
### LEGAL ANALYSIS

### A. *Timeliness*

Duraso's conviction became final on September 18, 2014, when his time for seeking review in the United States Supreme Court expired. Sup. Ct. R. 13. Accordingly, **337 days** accrued against § 2244(d)'s one year time limit before he filed his application for post-conviction relief in the trial court on August 21, 2015. Even though the Louisiana Supreme Court rendered judgment on September 22, 2017, the respondent concedes that no time should count against the petitioner until notice of that ruling was mailed on or about October 25, 2017. Doc. 17, att. 1, p. 16. We accept this contention under the doctrine of equitable tolling and based on Duraso's diligence in filing his habeas petition so soon after he allegedly received notice of the Louisiana Supreme Court's ruling.

*See*, *e.g.*, *Clarke v. Rader*, 721 F.3d 339, 344–45 (5th Cir. 2013) (discussing mailing delays as grounds for equitable tolling). Accordingly, only **23 days** accrued against the one year time limit between notice of the Louisiana Supreme Court's ruling and filing of the federal habeas petition, meaning that a total of **360 days** are counted. The petition is therefore timely.

### B. Exhaustion and Procedural Default

The respondent agrees that all claims raised in this matter have been exhausted in the state courts, and does not argue that any claim is subject to procedural default. *See* doc. 17, att. 1, p. 21. Our review of the record leads us to the same conclusion. All claims raised by Duraso may therefore be reviewed on the merits by this court.

### C. Merits Consideration

#### 1. Motion to quash/speedy trial

Duraso first complains that his right to a speedy trial and due process was violated by the denial of his motion to quash. Although Duraso only presented the violation of state law on his appeal, he reframed the issue in terms of constitutional violations in his application for post-conviction relief. Accordingly, we find that all aspects of the claim were exhausted in the state courts. The fact that the Third Circuit Court of Appeal, as the last state court to offer reasons for its decision, denied this claim as repetitive in the application for post-conviction relief does not mean that it was procedurally defaulted. Instead, it merely requires us to look through post-conviction proceedings to the merits decision on appeal. *Bennett v. Whitley*, 41 F.3d 1581, 1582–83 (5th Cir. 1994).

Under this claim Duraso contends that the state courts erred by denying him a speedy trial and by misapplying state law. As the respondent notes, "federal habeas corpus relief does not lie

for errors of state law." *Estelle v. McGuire*, 112 S.Ct. 475, 480 (1991). Accordingly, we evaluate this claim only under the speedy trial allegations.

The Sixth Amendment, as applied to the states through the Fourteenth Amendment, provides that for "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." *Divers v. Cain*, 698 F.3d 211, 215 (5th Cir. 2012). A state court may be deemed to have resolved a federal speedy trial claim on the merits even when it mentions "only the similar state rules and authorities." *Id.* at 216–17. Violation of the petitioner's right to a speedy trial requires dismissal of the indictment. *Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008).

Speedy trial act claims are evaluated in federal court based on the four factors set out in *Barker v. Wingo*, 92 S.Ct. 2182 (1972). These factors are: (1) length of the delay, (2) reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant. *Id.* at 2192–93. None of the *Barker* factors is dispositive, and the four are instead "related factors [that] must be considered together and with such other circumstances as may be relevant." *Goodrum*, supra, 547 F.3d at 257 (quoting *Barker*, 92 S.Ct. at 2193).

### a. *Length of delay*

Under the first *Barker* factor, the court conducts a two-part inquiry. First, the delay must be long enough to give rise to a presumption of prejudice – generally, a delay of one year between indictment or arrest (whichever is earlier) and trial is sufficient. *Amos v. Thornton*, 646 F.3d 199, 206 (5th Cir. 2011) (citing *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003)). Once this presumption is met, the court proceeds with the remainder of the *Barker* analysis and asks "the extent to which the delay extends beyond the bare minimum required to trigger a *Barker* analysis," which is "particularly significant to the speedy trial analysis because . . . the presumption

that pretrial delay has prejudiced the accused intensifies over time." *Amos*, 646 F.3d at 206 (internal quotations omitted).

In this matter, Duraso was arrested in West Virginia in December 2008. His trial did not commence until September 2011. Accordingly, there was a thirty-three month delay between arrest and the beginning of proceedings, long enough to create a presumption of prejudice and sufficiently over that one-year minimum to weigh in Duraso's favor.

### b. *Reasons for delay*

The weight assigned to the next factor, based on the justifications for the delay, depends on the reasons offered.

> At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the state. At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state. Between these extremes fall unexplained or negligent delays, which weigh against the state, "but not heavily."

*Goodrum*, supra, 547 F.3d at 258 (quoting *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994)) (footnotes and internal citations omitted). Here the Third Circuit found in relevant part that some of the delay was attributable to defense motions and an October 2010 motion for continuance which it determined to be joint, even though brought by the state. *Duraso*, 127 So.3d at 1019–21.

This matter was initially set for trial on October 19, 2009. Doc. 17, att. 3, p. 8. On October 19, 2009, it was refixed at the state's motion for January 25, 2010. *Id.* at 10. On January 20, 2010, Duraso filed a pro se motion to recuse his attorney. Doc. 17, att. 6, pp. 107–10. Defense counsel made an oral motion to continue trial on January 25, 2010. Doc. 17, att. 7, p. 120. The trial court deferred ruling on that request and instead set the motion to recuse for hearing the following day. *Id.* at 121–23. After hearing Duraso's motion for recusal, the court denied same and defense counsel then renewed his motion for a continuance. *Id.* at 127. This time the court granted the

motion and set trial for April 19, 2010. *Id.* at 127–29. On that date, it was determined that Duraso was ready for trial. Doc. 17, att. 3, p. 14. Trial did not commence, however, and the record next reflects a continuance filed by the state on June 14, 2010, which was granted and resulted in the matter being reset for October 25, 2010. *Id.* at 15.

The state filed another motion to continue on October 25, 2010, as noted above, which was granted. *Id.* at 16. The state then sought and received multiple continuances in 2011, without any apparent objection from the defense. *Id.* at 17–20. On March 9, 2011, trial was set for May 16, 2011. *Id.* at 20. On May 9, it was determined that Duraso was available for trial. *Id.* at 21. However, the trial did not begin and, on June 7, Duraso filed his pro se motion to quash. Doc. 17, att. 6, pp. 164–68. On June 10, 2011, at the state's motion, the court ordered the trial date fixed a final time, for September 6, 2011, and proceedings began on that date as scheduled. Doc. 17, att. 3, pp. 22–23.

Here, as the Third Circuit noted, the defendant's own continuances and other motions only contributed moderately to the delay while the state sought multiple continuances.[5] Regardless of the fact that the defense did not voice any opposition to the state's continuances, the bulk of the delay still appears attributable to the prosecution. However, there is no evidence that the continuances were sought in bad faith.[6] Accordingly, this factor weighs against the state, albeit not heavily. *Goodrum*, 547 F.3d at 258.

---

[5] Duraso contends that the trial court was also at fault for the delays, due to the time spent processing his pretrial motions. *See* doc. 1, att. 2, pp. 20–21. He fails to identify where these delays ever upset a trial date. At any rate, even if any of the above delays are attributable to the state court rather than the district attorney, they weigh in favor of Duraso.

[6] In her dissent, Judge Cook asserted that the "case was 'bumped' at the State's request six times because of conflicts on the court's docket." *Duraso*, 127 So.3d at 1024. Such a finding would not support a conclusion that the state deliberately delayed in order to disadvantage the defense.

### c.  Defendant's assertion of his right to a speedy trial

The third factor asks whether the defendant "diligently asserted his speedy trial right." *Amos*, 646 F.3d at 207 (quoting *United States v. Parker*, 505 F.3d 323, 329 (5th Cir. 2007)). As the Fifth Circuit observed, it is the defendant's burden "to alert the government of his grievances." *Id.* (quoting *Robinson v. Whitley*, 2 F.3d 562, 569 (5th Cir. 1993)). Defendants must "appropriately assert their speedy trial rights, as viewed in light of their other conduct." *Laws v. Stephens*, 536 Fed. App'x 409, 413 (5th Cir. 2013) (quoting *United States v. Loud Hawk*, 106 S.Ct. 648, 655–56 (1986)) (cleaned up). Thus, this factor may weigh against a defendant when he repeatedly moves for dismissal on speedy trial grounds but behaves in a way that undermines his professed desire for a speedy trial. *Id.*; *see also United States v. Frye*, 489 F.3d 201, 212 (5th Cir. 2007) ("A motion for dismissal is not evidence that the defendant wants to be tried promptly.") This factor hinges on the "frequency and forcefulness" of the defendant's invocation of his right to a speedy trial. *Goodrum*, 547 F.3d at 249.

Inconsistent/insufficient assertion of the speedy trial right may be found where a defendant fails to object to the state's requests for continuances. *See Laws*, 536 Fed. App'x at 413. That is indeed what has occurred in Duraso's case – he did not protest the failure to commence trial until he filed his motion to quash on June 7, 2011, three days before the final trial date was set. Doc. 17, att. 6, pp. 164–68. There is no indication that he objected to any prior continuance. Accordingly, this factor does not weigh in his favor.

### d.  Actual prejudice

Under the final factor, Duraso must show that he suffered actual prejudice. To this end, the court looks to three interests that the speedy trial right was designed to protect: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3)

limitation of the possibility that the defense will be impaired. *Laws*, 536 Fed. App'x at 414 (citing *Barker*, 92 S.Ct. at 2193). "The most serious concern is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* (cleaned up).

Duraso alleges that "the fairness and reliability of his trial [were] likely harmed by the state's delay, as witnesses would have been able to recall events with greater precision had the trial been held earlier." Doc. 18, p. 9. However, such a general possibility is insufficient to support a claim of prejudice, especially in light of the fact that the state was also likely dependent on witnesses' memories in order to prove its case beyond a reasonable doubt. *Loud Hawk*, 106 S.Ct. at 656. Accordingly, Duraso fails to satisfy the third prong of the actual prejudice factor.

Duraso also alleges generally that his pretrial incarceration and anxiety over the thirty-three months from arrest to prosecution satisfy the prejudice factor. However, he fails to meet the "difficult burden" of showing that either circumstance rose to such a level. *Laws*, 536 Fed. App'x at 414. "In the absence of particularized trial prejudice, delay attributable to the government's negligence has typically been shockingly long to warrant a finding of prejudice." *United States v. Robinson*, 455 F.3d 602, 608 (6th Cir. 2006) (quotations omitted); *see, e.g.*, *Doggett v. United States*, 112 S.Ct. 2686, 2693–94 (1992) (six years); *United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999) (five and a half years); *cf. Serna-Villareal*, supra, 352 F.3d at 231 (no actual prejudice shown, based on three year and nine month delay). This factor thus weighs against Duraso and his thirty-three month delay from arrest to trial.

### e.   *Balancing the factors*

As noted above, the first factor weighs in Duraso's favor because he has shown delay beyond the one-year minimum to create a presumption of prejudice. The second factor weighs in his favor because the state requested multiple continuances while the defense requested only one,

accounting for only a three-month delay in the proceedings. However, this factor does not weigh strongly for Duraso because there is no evidence that the state sought its continuances for any improper purpose.

The third factor, assertion of the speedy trial right, weighs heavily against Duraso. He did not file his motion to quash until June 2011, after failing to oppose the multiple requests for continuance by the state. Accordingly, this factor weighs against him. Additionally, he fails to show any actual prejudice based on the delay, particularly as it concerns his ability to present a defense. The balance of factors thus weighs against a denial of Duraso's speedy trial rights, and he cannot show sufficient error to the Third Circuit's ruling. He is therefore not entitled to habeas relief on this claim.

### 2. *Denial of motion to withdraw guilty plea*

Duraso next alleges that the trial court violated his rights under the Sixth and Fourteenth Amendments by denying his motion to withdraw guilty plea, based on the trial court's decision to reject the parties' sentencing recommendation. As a result, Duraso contends, his plea was not voluntarily or intelligently made and should have been vacated.

The Third Circuit denied this claim. It noted that, under Article 559 of the Louisiana Code of Criminal Procedure, a court could permit a guilty plea to be withdrawn at any time before sentence. *Duraso*, 127 So.3d at 1021. After sentencing, the court's discretion is more constrained though pleas can still be withdrawn if they are "constitutionally infirm."[7] *Id.* In this matter, the Third Circuit held, the trial court had not abused its discretion in denying the motion to withdraw

---

[7] The respondent argues that this claim was decided solely on state law grounds and is not subject to federal habeas review. Doc. 17, att. 1, pp. 27–28. However, the reference to constitutional infirmity above appears to reflect a determination that Duraso's plea was constitutionally sound.

because the defendant failed to prove any inducements or misrepresentations relating to his plea. *Id.* at 1021–22.

Under federal law, "[t]he longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 106 S.Ct. 366, 369 (1985) (quoting *North Carolina v. Alford*, 91 S.Ct. 160, 164 (1970)). Under *Boykin v. Alabama*, supra, it is plain error for a trial court to accept a defendant's guilty plea without ensuring that it is intelligent and voluntary. 89 S.Ct. at 1711. Due process also requires that the defendant be advised of the maximum sentence for his conviction, though constitutional error will not result from the trial court's failure to so advise if the defendant has already been made aware of this fact from some other source. *Burton v. Terrell*, 576 F.3d 268, 271–73 (5th Cir. 2009). Official court records "are entitled to a presumption of regularity and are accorded great evidentiary weight" on habeas review, and the defendant's statements in open court likewise "carry a strong presumption of verity." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081–82 (5th Cir. 1985); *Blackledge v. Allison*, 97 S.Ct. 1621, 1629 (1977).

When a plea "rests in any significant degree on a promise or agreement of the prosecutor, so [that] it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Jackson v. Andrews*, 31 Fed. App'x 833, 2002 WL 180375, *3 (5th Cir. 2002) (quoting *Santobello v. New York*, 92 S.Ct. 495 (1971)). When the alleged promise is inconsistent with the defendant's representations in open court, he is not entitled to habeas relief based on that guilty plea unless he can prove (1) the terms of the promise; (2) when the promise was made; and (3) the precise identity of an eyewitness to that promise. *Id.* (citing *United States v. Smith*, 915 F.2d 959, 963 (5th Cir. 1990)). Additionally, there is no constitutional error when a court denies a

defendant's motion to withdraw a plea based merely on his disappointment with the sentence he received. *United States v. Rodriguez*, 62 F.3d 723, 725 (5th Cir. 1995).

As the Third Circuit noted, Duraso appeared in open court at his plea hearing and acknowledged that his actions were free and voluntary and that he understood the rights he was waiving. Doc. 17, att. 7, pp. 164–66. In this colloquy, the court advised him of the appropriate sentencing range, five to twenty years per count, and that it could "impose a maximum sentence despite any plea agreement." *Id.* at 164–65. Duraso then stated that he understood. *Id.* After the court accepted Duraso's plea to all four counts of aggravated incest, the victim addressed the court on the impacts of his crimes. *Id.* at 173–76. The court then heard the state's recommendation of twenty years of imprisonment on each count, with all but five years to be served concurrently, for a total term of imprisonment of twenty-five years. *Id.* at 177–78. The court rejected the recommendation, however, based on Duraso's criminal history and "the nightmarish reality of the crimes he has committed." *Id.* at 178. It then imposed the total fifty year term described above, with twenty years for each term and with all of counts 1 and 2 running consecutively and ten years of count 3 also running consecutively, and the remaining years to be served concurrently. *Id.* at 180–81.

Duraso maintains that "the record demonstrates that [he] had a justifiable belief in expecting certain consequences; i.e., that he would receive the recommended twenty-five year sentence and certainly not double the agreed-upon term of incarceration." Doc. 1, att. 2, pp. 30–31. He fails to identify anything in the record, however, to undermine his statements at the colloquy, nor does he provide any indications that he received guarantees from the prosecution beyond the making of a sentence **recommendation** which would not be binding on the judge.

Accordingly, he has not shown that his plea was involuntary or that there was error in the state court's decision justifying habeas relief.

### 3. *Enforcement of Louisiana Code of Criminal Procedure Article 580*

Duraso next claims that the state courts violated his right to due process through the manner in which they determined that the state statute of limitations for commencing trial, at Article 578 of the Louisiana Code of Criminal Procedure, had been tolled under Article 580 by defense motions. As the respondent notes, this is in large part a rehashing of his due process allegations under Claim 1. In his reply, Duraso attempts to distinguish between these claims as as-applied versus as-written challenges. Doc. 18, pp. 11–12. This distinction, however, does not change our conclusion above that, in the absence of a speedy trial violation, there can be no relief based on the state courts' denial of the motion to quash under state law and does not change our conclusions above under the *Barker* factors. Duraso's general allegation that the state created an unconstitutional exception to its own statute through another statute, and/or that the state courts acted unconstitutionally in interpreting that statute, does not show a constitutional violation and habeas relief does not lie for errors of state law. Duraso thus shows no right to relief under this claim.

### 4. *Ineffective assistance of counsel: miscellaneous allegations of deficient performance*

Duraso next complains that his counsel was ineffective based on multiple allegations of deficient performance.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth

Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id.* at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)). To satisfy the second prong after a guilty plea, a federal habeas petitioner must show that, but for counsel's errors, he would not have pleaded guilty and would have instead insisted on going to trial. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (citing *Hill v. Lockhart*, 106 S.Ct. 366 (1985); *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990)). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

The Third Circuit found that Duraso's ineffective assistance claims were without merit, because he could not show the required prejudice under *Strickland*. Doc. 17, att. 4, p. 248. Under this claim Duraso raises the following allegations of deficient performance: (a) failure to consult

with defendant and conduct an adequate investigation; (b) failure to present a defense; (c) failure to object to any of the state's continuances; (d) failure to advise the defendant that the court could impose the maximum sentence on him for each count and to order the sentences to run consecutively, increasing the sentencing range to eighty years.

### a. *Failure to investigate and interview witnesses*

Duraso first alleges that trial counsel failed to consult with him and investigate the case. To this end he cites jail logs showing the amount of time that trial counsel, Ralph Williams, spent visiting him and claims that Williams did not visit him at all between January and October of 2010. Doc. 1, att. 2, pp. 41–43. Duraso states that he advised Williams of where he could locate employment and bank records that could show that he was not in Calcasieu Parish "most of the time frame [when] the alleged abuse was reported to have occurred" and that he also gave Williams the names of potential witnesses. *Id.* at 41. However, he maintains, Williams "failed to get the records, interview witnesses or otherwise prepare a viable defense prior to trial, showing that it was impossible for Mr. Duraso to have committed the alleged crime." *Id.*

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Speculation about what the investigation would have yielded is insufficient to show prejudice under *Strickland*. *Johnson v. Cain*, 548 Fed. App'x 260, 262 (5th Cir. 2013). Additionally, complaints regarding uncalled witnesses are disfavored in federal habeas review, due in part to the largely speculative nature of allegations about what an uncalled witness would have stated. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Duraso maintains that the victim resented him for the rules he imposed on him/her after the victim came into his custody. *Id.* at 42–43. He also alleges that the victim in his case had also been sexually abused by another relative and thus knew that Duraso could go to jail based on his/her allegations alone. *Id.* at 43. Finally, he states that it makes no sense that the victim moved with him to West Virginia in October 2008, fourteen months after the alleged abuse began in Calcasieu Parish. *Id.* at 43.

Even if defense counsel did neglect Duraso's case in the manner alleged, Duraso fails to show an investigation would have yielded exonerating evidence. Duraso provides names of witnesses who he alleges would support his claims. However, he fails to provide any affidavits from these individuals showing their availability, whether they were contacted by defense counsel, and what they would have/did tell defense counsel. Likewise, he fails to provide records excluding his presence from Calcasieu Parish on the dates when the abuse was alleged to have occurred. His own speculation in this matter is insufficient to show that he would have changed his mind about pleading guilty if counsel had only investigated further.

### b.  Failure to present a defense

Duraso next alleges that he pleaded guilty because he believed that defense counsel had not prepared a defense. As with the above, however, he fails to offer anything other than speculation about what witnesses defense counsel might have called or what evidence he could put on to challenge the state's case. Accordingly, he fails to show prejudice under *Strickland*.

### c.  Failure to object to state's requests for continuances

Duraso maintains that defense counsel erred by failing to object to the state's requests for continuances, and in particular by acquiescing to the motion granted on October 25, 2010. This motion was thus deemed a "joint motion for continuance" by the Third Circuit, which then

determined that the continuance had suspended the time period for bringing Duraso to trial under state law. *Duraso*, 127 So.3d at 1019–21. Accordingly, the Third Circuit found no error in the trial court's denial of the motion to quash. *Id.* at 1021.

By the time that the time limit for bringing the case to trial approached, the defense could not revoke its acquiescence to the state's October 2010 motion for continuance or its failure to oppose the other continuances. Duraso fails to show any basis, outside of the benefit of hindsight, why the defense should have opposed any continuance when made. He alleges above that defense counsel failed to consult with him or prepare a defense, but also maintains that counsel should have been ready to proceed to trial at each of the previous trial dates. Accordingly, although the Third Circuit denied all ineffective assistance claims under *Strickland*'s second prong, we deny relief on this allegation under *Strickland*'s first prong. *See Santellan*, supra, 271 F.3d at 193 ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.")  Duraso cannot show deficient performance under this allegation and we need not address the question of prejudice.

### d.  *Failure to advise Duraso of maximum sentence*

Finally, Duraso alleges that defense counsel did not advise him of the maximum term (twenty years) for each count or of the fact that the sentences could be ordered to run concurrently. As noted above, however, before accepting his plea the court advised Duraso of the appropriate sentencing range and of the fact that it was not bound by the parties' recommendation. Moreover, the fact that the terms could run consecutively should have been clear to Duraso from the fact that the parties agreed to a twenty-five year sentencing recommendation when the maximum term for any count of his conviction, as explained supra, was only twenty years. Even if defense counsel did fail to explain the sentencing range to him before the plea hearing, Duraso cannot show that

this information was unknown to him before he entered his plea. Accordingly, he fails to show any prejudice.

As the Third Circuit found, Duraso has not satisfied *Strickland* for any of the above ineffective assistance claims. He therefore fails to show error to the state court's ruling and is not entitled to habeas relief.

### 5.  *Ineffective assistance: breakdown in communication*

Duraso next complains of a breakdown in communication with his counsel, namely based on counsel's failure to support Duraso's motion to quash. Counsel's failure to adopt a pro se motion filed by his client does not amount to a denial of representation for that client. As this court has noted, defense counsel is not required to adopt a defendant's pro se motion or to stand by when that motion is being argued. *Papillion v. Vannoy*, 2016 WL 7323320, at *2 (W.D. La. Dec. 14, 2016) (citing *Neal v. State*, 870 F.2d 312, 315–16 (5th Cir. 1989)). Therefore Duraso cannot show that he was denied counsel at a critical stage of the proceedings and his claim must be analyzed under *Strickland*.

Duraso cannot show adequate prejudice based on counsel's failure to support his motion to quash. The trial court and Third Circuit found no merit to the motion under state law and we cannot find a speedy trial violation based on the record of proceedings. Duraso thus shows no error to the Third Circuit's ruling on his ineffective assistance claims above.

### 6.  *Ineffective assistance: breach of attorney-client privilege*

Duraso next asserts that he received ineffective assistance when trial counsel Ralph Williams and Williams's supervisor testified against him. Before jury selection began, the court acknowledged that Duraso had filed complaints alleging that Williams was unprepared to try the case. Doc. 17, att. 7, pp. 152–53. Williams and his supervisor, James Dixon, both of the Calcasieu

Parish Public Defenders' Office, responded. Dixon stated that, after receiving a number of written complaints from Duraso, he spoke with Williams and reviewed the file. *Id.* at 153. From this review he found no evidence that Williams had failed to pursue Duraso's defenses. *Id.* Dixon also stated that he had received a letter from Duraso about his motion to quash and after reviewing the basis for that motion with Williams, agreed that the motion was not worth pursuing. *Id.* at 153–58. Duraso maintains that, through this testimony, the public defenders' office aligned itself against him.

Assuming arguendo that trial counsel performed deficiently when he allowed his supervisor to testify about the complaints Duraso had submitted and his evaluation of the merits of Duraso's pro se motion, we still cannot find any prejudice to Duraso's case because Duraso fails to show a basis on which his motion to quash would have succeeded. He also fails to show what prejudice to his case might have resulted from Dixon's refutation of his claim that trial counsel was not preparing a defense. Accordingly, he demonstrates no error to the Third Circuit's ruling on this claim and is not entitled to habeas relief.

### 7. *Request for evidentiary hearing*

Finally, Duraso complains of the state court's refusal to grant an evidentiary hearing so that he might "establish whether counsel investigated and prepared a defense and to establish on the record why [counsel] did not call witnesses or prepare to impeach witnesses as argued herein." Doc. 1, att. 2, p. 56. He requests a hearing in this court. *Id.*

An evidentiary hearing is not warranted when the petitioner's claims can be resolved on the existing record, or where the facts alleged by the petitioner, even if true, would not entitle him to habeas relief. *Schriro v. Landrigan*, 127 S.Ct. 1933, 1940 (2007); *see, e.g.*, *West v. Johnson*, 92 F.3d 1385, 1410 (5th Cir. 1996). A petitioner is also not entitled to an evidentiary hearing based

-26-

on conclusory allegations or on self-serving declarations contradicted by credible record evidence. *United States v. Zuno-Arce*, 209 F.3d 1095, 1103 (9th Cir. 2000) (overruled on other grounds by *Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002)); *United States v. Barrow*, 448 F.3d 37, 41–42 (1st Cir. 2006); *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991); *see, e.g.*, *United States v. Gallant*, 562 Fed. App'x 712, 715–16 (10th Cir. 2014) (affirming denial of evidentiary hearing on uncalled witness claim in § 2255 proceeding, where movant failed to provide any support for his allegations of witnesses' availability or testimony). Above we determined that regardless of Duraso's ability to show whether Williams performed deficiently in preparing his defense, he could not satisfy *Strickland*'s second prong. We also determined that Duraso could not show ineffective assistance based on Duraso's failure to oppose the state's continuances, because this decision did not reflect deficient performance when viewed under *Strickland*'s deferential standards rather than with the hindsight of a defendant arguing his motion to quash rather than preparing to defend himself on the merits. Accordingly, the claims for which he requests a hearing (and all others) can and have been resolved on the record in this matter, and this petition should be denied without a hearing.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 7th day of June, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE